### A. F. Boyd et al. v. H. C. Ghent.

No. 898. Decided May 14, 1900.

**1. Community Property—Judgment Creditor—Lien—Divorce.**

A creditor recording his abstract of a judgment for a community debt obtained thereby a lien upon the community property which prevailed over liens afterward established in favor of the wife by a decree of divorce in a suit therefor then pending. (P. 547.)

**2. Same.**

The lien for a judgment for a community debt attaches to the interest of both husband and wife, in the community property; and the wife's rights are like those of a partner in partnership property as against partnership debts. The rights of the creditor are not affected by the state of accounts between husband and wife. (P. 548.)

Question certified by the Court of Civil Appeals for the Third District, in an appeal from Bell County.

*A. M. Monteith,* for plaintiffs in error.—H. C. Ghent, defendant in error, having instituted his suit and obtained judgment against C. L. Trigg, husband of Mrs. A. F. Trigg, and filed his abstract of judgment during the pendency of the suit of Mrs. A. F. Trigg v. C. L. Trigg in the District Court of Bell County, said suit being for divorce and the ascertainment and determination of their property rights between each

other, was bound by the judgment of the District Court against C. L. Trigg in said cause, as he claims his judgment lien only as against the separate property of C. L Trigg and the community interest of C. L. Trigg and A. F. Trigg. Cassadey v. Anderson, 53 Texas, 527; Evans v. Welborn, 74 Texas, 530; Dwyer v. Rippetoe, 72 Texas, 533; Randall v. Snyder, 64 Texas, 353; 2 Vanfleet's Former. Adjudication, 539.

H. C. Ghent's judgment lien claimed on the property in controversy is subject to every equity existing against the interest of C. L. Trigg and the community interest of C. L. Trigg and A. F. Trigg in the same. The judgment in the divorce case of Trigg v. Trigg decides that almost all the property in controversy in said cause was therein adjudicated to be the separate property of Mrs. A. F. Trigg, and that there was no cash from which the cost could be paid by her or him out of the community funds, unless the small amount of property adjudicated to be community property was sold by private sale or under order of the court and proceeds applied to the payment of costs to the parties entitled thereto. In case this was not done, if paid at all, it must be paid out of the separate property of one or the other spouse, or both.

The decree gave to Mrs. A. F. Trigg the right and option to have C. L. Trigg's interest in said property sold and to discharge the lien as to her part of the same by voluntarily paying the balance of the costs and thus save her interest in the said community property from sale, and her payment of the same would subrogate herself to the lien of the owners of the costs against her interest in said property. Michael v. Knapp, 4 Texas Civ. App., 464, 468; Ilse v. Seinsheimer, 76 Texas, 459; Allday v. Whitaker, 66 Texas, 673; Parker v. Coop, 60 Texas, 111; McKamey v. Thorp, 61 Texas, 648; Oberthier v. Stroud, 33 Texas, 525; Hood Camp v. De Cordova, 92 Texas, 206; Blankenship v. Douglas, 26 Texas, 225.

The judgment of H. C. Ghent not being a personal judgment against Mrs. A. F. Trigg, she is entitled so far as her separate property and interests are concerned to the same protection from the law as H. C. Ghent. A wife without fault on her part has her property often taken and used by her husband who has by law the management and control of the same. A third party who deals with her husband and credits him does so of his own free will and accord. Parker v. Coop, 60 Texas, 116.

By judicial proceeding between the husband and wife their property rights as between each other can be best ascertained because of the intimate business relations between them and the intricate questions of law and fact involved, and a judgment between them will be binding upon strangers to the proceedings claiming rights and liens against the property concerning the status of which adjudication was made, said strangers making no contention that the results were produced by fraud or collusion between the parties, and there being no question of fraud or collusion in this instance. If this was the rule as against strangers it is certainly the rule as against H. C. Ghent; because, if he has any lien as against the property in controversy it was obtained pendente lite and became

subject to the judgment in the case of Trigg v. Trigg. 2 Vanfleet's Former Adjudication, 913, 914, 917, 926; Lehman v. Stone, 16 S. W. Rep., 784.

The suit of Trigg v. Trigg was of such a nature as to require the adjudication and determination of all the property rights between the husband and wife. At the time said judgment was rendered in said cause, C. L. Trigg was personally liable to H. C. Ghent as shown by the judgment in the case of Ghent v. Trigg, and the legal presumption arises that C. L. Trigg claimed his liability thereon and that due allowance was made to him of property or interest in property or credits to pay the same, and the same duly deducted from Mrs. A. F. Trigg's interest in any community property, and that H. C. Ghent is required to look to the interests adjudicated to C. L. Trigg in said divorce decree for the satisfaction of his judgment, and not as against the property of Mrs. A. F. Trigg, now Boyd.

*John B. Durrett* and *Winbourn Pearce,* for defendant in error.—The claim of plaintiff H. C. Ghent against C. L. Trigg was a community debt and as such had priority of claim to satisfaction out of the community estate of C. L. Trigg and his wife Ann Francis Trigg (now Mrs. A. F. Boyd, defendant herein), and only the residue of said community estate after the discharge of said community debt was subject to division between C. L. Trigg and A. F. Trigg upon dissolution of the conjugal partnership by decree of absolute divorce. Jones v. Jones, 15 Texas, 143; Good v. Coombs, 28 Texas, 35; Rev. Stats., art. 2973; Converse v. McKee, 14 Texas, 20; 3 Am. and Eng. Enc. of Law, pp. 363, 364; 17 Id., pp. 1195, 1201; Grandjean v. Runke, 39 S. W. Rep., 945.

The suit of A. F. Trigg v. C. L. Trigg, as far as it concerned or affected the community property of the parties, was simply a suit for dissolution of the conjugal partnership and for an accounting and division of the partnership property; and no decree rendered in said cause between said C. L. Trigg and his wife A. F. Trigg with reference to said community property could affect the right of H. C. Ghent to have his community claim paid out of said community property.

All of the community property owned by C. L. Trigg and his wife A. F. Trigg (now Mrs. A. F. Boyd) at the time of the institution of the divorce suit in March, 1888, was liable for the debt of plaintiff H. C. Ghent, and there could be no settlement of the rights of the two parties in said community property or division of the same until the community claim of H. C. Ghent was satisfied.

If A. F. Trigg (now Mrs. A. F. Boyd) fixed a lien upon the community property of herself and C. L. Trigg, to secure for herself an equitable settlement and division of said community property, by filing her divorce suit in March, 1888, then H. C. Ghent as an execution creditor of the conjugal partnership became subrogated to whatever lien was held by said A. F. Trigg on the assets of said conjugal partnership.

Charleson v. McGraw, 3 Wash. Ter., 344, and same as under first proposition.

BROWN, Associate Justice.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the question hereafter stated, based upon a statement of the case, from which we make the following statement of the facts material to the question submitted:

C. L. Trigg and A. F. Trigg, now Boyd, were married prior to December 21, 1882, on which date the land in controversy was conveyed to C. L. Trigg. During the marriage, C. L. Trigg contracted a debt to H. C. Ghent, upon which Ghent filed suit in the County Court of Bell County on May 15, 1888, and judgment was rendered in favor of Ghent against Trigg December 18, 1888, for the sum of $454.30. On the same day, an abstract of the judgment was filed and recorded in the office of the county clerk of Bell County and an execution was issued upon the judgment within twelve months and returned, "no property found." On October 3, 1894, an alias execution was issued upon the judgment, directed to the proper officers of Bell County, and was, by the sheriff of that county, levied upon the land in controversy, which was duly advertised and was sold at public outcry November 6, 1894, H. C. Ghent being the purchaser for the sum of $200, which was credited upon his execution; and on the 19th day of November, 1894, the sheriff made and delivered to Ghent a deed conveying to him the land so sold. On the day the deed was made, Ghent filed a suit in the District Court of Bell County against A. F. Boyd (formerly A. F. Trigg) and her husband, J. W. Boyd, to recover the land.

On March 29, 1888, Mrs. A. F. Trigg filed a suit in the District Court of Bell County against her husband, C. L. Trigg, for divorce, for the custody of their minor child, and for the partition of their common property and settlement of their property interests. On December 19, 1888, the divorce was granted, the custody of the child awarded to the mother, and the property in controversy, with some other not necessary to name, declared to be the community property of Trigg and his wife. The trial of the case began December 13, 1888, and judgment was entered on the 19th of that month. The court adjudged all of the costs of the proceedings against C. L. Trigg, but provided in the judgment that if the costs could not be collected from him, then the plaintiff, A. F. Trigg, should pay all such costs, excepting the cost of taking certain depositions and procuring testimony by Trigg, and further specified that in case Mrs. Trigg paid any of the costs, she should be allowed a credit for it in the partition of the community property. On the 23d day of January, 1889, the District Court amended its original judgment so as to give Mrs. A. F. Trigg a judgment against C. L. Trigg for $110, costs already paid by the former, and for the sum of $353.35, the amount which C. L. Trigg had received from the community property in excess

of his share, and the court declared that for these sums, Mrs. A. F. Trigg should have a lien upon the community real estate, including that now in controversy, foreclosing the lien in her favor upon the land. The judgment also provided that in case Mrs. Trigg should pay any other sum of the costs of the suit, then she should have a lien upon the property to reimburse her for such payments as she might thereafter make. It was declared that the land was not susceptible of partition between the parties and the court ordered that it be sold for the purposes of partition, and that "after deducting from the interest of the respective parties all costs and charges which may have been adjudged against it," the proceeds of such sale should be equally divided between the parties. After the divorce was granted, Mrs. Trigg paid out of her separate funds $646, in settlement of the costs of the suit. At a date not named in the statement, an order of sale was issued upon the decree and the land in suit was sold by the sheriff of Bell County as under execution, was bought in by Mrs. Trigg, and duly conveyed to her by deed. During the marriage, C. L. Trigg borrowed $7000, which was secured by a mortgage on the separate property of Mrs. A. F. Trigg, which sum she was compelled to pay out of her separate property after the divorce was granted. The money borrowed by Trigg was not used for her benefit nor for the benefit of her separate property, which produced revenue enough to pay for all improvements made upon it.

Upon this statement, the following question is submitted:

"Assuming that the property was not homestead, did Ghent, by having the abstract of his judgment against C. L. Trigg properly recorded and indexed in the judgment records of Bell County one day prior to the rendition of the judgment referred to in the suit of Mrs. A. F. Trigg (now Boyd) against her former husband, C. L. Trigg, fix and secure a lien on the entire property in controversy superior to both or either of the liens adjudged and decreed to Mrs. Trigg by said decree?"

To the question we answer, he did.

The judgment in favor of Ghent against Trigg was rendered for a community debt of Trigg and his wife, and the land, being their common property, was liable for this debt, and would have been if it had been set apart to the wife in the proceedings for a divorce before the judgment was rendered against Trigg. Grandjean v. Runke, 39 S. W. Rep., 945. When the judgment was duly recorded and indexed in the office of the county clerk of Bell County, a lien was created upon all of the community lands of Trigg and his wife in that county, which could not be displaced or postponed by a decree entered in a suit to which Ghent was not a party. Richey v. Hare, 41 Texas, 336.

The suit by Mrs. Trigg against her husband for divorce did not suspend the rights of creditors of Trigg to collect their debts by suit against him. The only limitation placed by the statute upon the power of the husband to deal with the common property during the pendency of a suit for divorce is that he shall not sell the lands with a view to fraudulently injure the rights of the wife. Rev. Stats., art. 2983; Moore v.

Moore, 73 Texas, 382.   In the case cited, a suit was pending for divorce between one Rice and his wife, and during the pendency of that case another party sued Rice in the United States Circuit Court for a tract of land, the community property of himself and his wife, and judgment was rendered against Rice for the land, the wife not being a party.   After that judgment had been entered, a divorce was granted to the wife and partition of the community property ordered.   In the course of litigation, the wife claimed that the judgment rendered in the United States Circuit Court during the pendency of the divorce was void, but this court held, that, there being no proof that it was intended thereby to defraud the wife, the judgment was valid, notwithstanding the pendency of the divorce suit.

We do not understand counsel for plaintiffs in error as disputing any of these propositions, but they claim that only the interest of C. L. Trigg in the property after the rights of the wife had been ascertained and her equities adjusted, could be subjected to the payment of this debt.   By this contention, counsel asserts the rule of law that would apply if it were partnership property and the judgment were the debt of one partner; but the rule has no application in this case.   If Trigg and wife had been partners in business, she could not have had a dissolution and partition of partnership property except upon settlement of all partnership debts.   A sale of partnership property under a judgment against the firm conveys the right of all partners, and there is no need to ascertain the interest of each partner.   The interest of both members of this quasi partnership was liable, and if Mrs. Trigg had died before it was rendered, the land could have been sold under this judgment.   Carter v. Connor, 60 Texas, 52.

In submitting this question, the court states that Trigg had borrowed $7000, secured by mortgage upon his wife's separate property, which was paid by her out of her separate funds after the divorce.   We see no bearing that this fact can have upon the rights of the parties in this suit.